UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHRISTINA RHIANNON LECROIX,

    Plaintiff,

v.                                                    CASE NO. 3:19-cv-1312-J-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

    Defendant.
_____/

### **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Following an administrative hearing held on November 14, 2018, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from October 21, 2015, the alleged disability onset date, through December 3, 2018, the date of the decision.[2] (Tr. 20-34, 40-61.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 15.)

[2] Plaintiff had to establish disability on or before December 31, 2020, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 20.) The relevant period for her SSI application is the month in which the application was filed (May 2016) through the date of the ALJ's decision (December 3, 2018). (*Id.*)

**I.     Standard of Review**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

**II.    Discussion**

    **A.     Issue on Appeal**

Plaintiff argues that the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence because, despite giving

great weight to the opinions of the State agency consultants (Dr. Harris and Dr. Bruno), the ALJ did not include their opined limitations to "non-confrontational supervision and constructive criticism from supervisors" and to "cooperative, non-threatening co-workers" in the RFC assessment and did not explain why these limitations were excluded.  (Doc. 17 at 6.)  Plaintiff acknowledges that the RFC assessment included *some* social limitations, such as "no exposure to the public and only occasional collaboration with co-workers and supervisors" (Tr. 25), but asserts that "the limitations opined by Drs. Harris and Bruno are more specific and restrictive than included in the ALJ's RFC finding, and there is no explanation from the ALJ as to why they were omitted" (Doc. 17 at 7).  Defendant responds, *inter alia*, that "the ALJ substantially incorporated the opinions of [the] State agency psychological consultants" into the RFC assessment "[b]y including limitations to simple[,] routine tasks requiring no exposure to the public and only occasional collaboration with coworkers and supervisors."  (Doc. 18 at 6.)

### B.    Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination.  *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).  With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  However, "the ALJ may reject any medical opinion if the evidence supports a contrary finding."  *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, *2

(11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining [S]tate agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* SSR 96-6p[3] (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

### C. Relevant Evidence of Record

On September 16, 2016, after a review of the medical records available as of that date, Alan Harris, Ph.D. completed a Psychiatric Review Technique ("PRT") form, opining, *inter alia*, that Plaintiff had moderate difficulties in maintaining social functioning and in concentration, persistence, or pace. (Tr. 70.) On the same day, Dr. Harris completed a Mental RFC Assessment, opining that Plaintiff was moderately limited in the ability: to understand, remember, and carry out detailed instructions; to maintain attention and concentration for

---

[3] SSR 96-6p has been rescinded and replaced by SSR 17-2p effective March 27, 2017. However, because Plaintiff's applications predated March 27, 2017, SSR 96-6p was still in effect on the date of the ALJ's decision.

4

extended periods; to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 75-76.) Dr. Harris noted that Plaintiff "[m]ay not work effectively with the public" and her "[r]elationships with supervisors and coworker[s] would be variable." (Tr. 76.)

> Dr. Harris provided the following additional explanation:
>
> A.   The claimant appears capable of following routine, simple and repetitive tasks. The claimant appears to be able to perform simple, daily activities.
>
> B.   Although deficits exist, the consensus of the data suggests that the claimant appears capable of performing simple, repetitive tasks with good understanding and persistence within given physical limitations. Claimant should be capable of attention and concentration for at least two hours at a time, and would require reasonable, but not frequent breaks throughout the day. In addition, the claimant is usually able to perform activities within a schedule, maintain regular attendance, and to be punctual within customary tolerances.
>
> C.   Social Interaction:
> The Claimant should be able to relate appropriately on a casual, limited and non-confrontational basis with the general public[,] such as when shopping. **This person could accept non-confrontational supervision and constructive criticism from supervisors, and usually relate appropriately with cooperative, non-threatening coworkers.** Claimant is able to ask relevant questions and request assistance when necessary and demonstrates adequate hygiene.
>
> D.   The Claimant would be able to adapt to an ordinary, routine

> work setting, respond appropriately to normal changes, avoid hazards, and travel independently. [She] [w]ould be able to set reasonable goals and independently initiate action to carry them out with infrequent assistance and encouragement.
>
> Conclusion: . . . [The medical evidence of record] and functional evidence indicates that the claimant's mental impairments appear to impose some work related limitations, but do not preclude all work. The claimant is able to meet the mental demands of a simple vocation on a sustained basis with limited social demands, despite the limitations resulting from any impairment.

(*Id.* (emphasis added).)

On December 1, 2016, based on a review of the available records, Julie Bruno, Psy.D. completed a PRT, essentially confirming Dr. Harris's PRT. (Tr. 108-10.) On the same day, Dr. Bruno also completed a Mental RFC Assessment, adopting in full Dr. Harris's opinions. (Tr. 114-16.)

### D. The ALJ's Decision

At step two of the sequential evaluation process,[4] the ALJ found that Plaintiff had the following severe impairments: affective disorder, anxiety-related disorders, hypertension, diabetes mellitus, neuropathy, and unspecified arthropathy. (Tr. 22.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 23.)

Then, before proceeding to step four, the ALJ determined that Plaintiff had

---

[4] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

6

the RFC to perform light work, except she was "limited to performing simple[,] routine tasks that require no exposure to the public and only occasional collaboration with co-workers and supervisors."[5] (Tr. 25.) In making these findings, the ALJ discussed Plaintiff's complaints, the medical evidence, and the opinions of record. (Tr. 25-32.) The ALJ addressed the opinions of Dr. Harris and Dr. Bruno as follows:

> The [S]tate agency psychological consultants who reviewed the record opined that the claimant's affective and anxiety disorders cause moderate functional limitations in social functioning and maintaining concentration, persistence or pace. The [S]tate agency consultant found the claimant capable of following routine, simple and repetitive tasks and meet[ing] the mental demands of a simple vocation on a sustained basis with limited social demands (Exhibit 1A/5A). The [ALJ] agrees and gives great weight here. The record documents that the claimant's symptoms have been well managed with medication management. Mental status evaluations have been generally stable and within normal limits, except for changes in her mood and/or affect. . . . Overall, the record supports the [S]tate agency assessment.

(Tr. 30-31.)

Then, after determining that Plaintiff was unable to perform any past relevant work, at the fifth and final step of the sequential evaluation process, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as a route clerk, an egg candler, and an assembler of electrical accessories. (Tr. 32-33.) All of these representative

---

[5] The RFC also limited Plaintiff to "no exposure to concentrated fumes, gases, poorly ventilated areas, and/or hazards" and to working "in a setting that allows for her to change positions hourly and perform job duties from either a seated or standing position." (Tr. 25.)

occupations are light jobs with a Specific Vocational Preparation ("SVP") rating of 2. (Tr. 33.)

### E.   Analysis

The Court agrees with Plaintiff that the ALJ erred when she failed to explain why she did not credit all of the State agency consultants' opinions in arriving at Plaintiff's RFC. The State agency consultants opined, *inter alia*, that Plaintiff "could accept non-confrontational supervision and constructive criticism from supervisors, and usually relate appropriately with cooperative, non-threatening coworkers." (Tr. 76, 116.) Despite giving great weight to the consultants' opinions, the ALJ did not include these particular limitations in the RFC assessment and did not provide any explanation for this failure.

Although the ALJ restricted Plaintiff "to performing simple[,] routine tasks that require no exposure to the public and only occasional collaboration with co-workers and supervisors" (Tr. 25), this restriction did not account for the consultants' restrictions to "non-confrontational supervision," "constructive criticism from supervisors," and "cooperative, non-threatening coworkers" (Tr. 76, 116). This is significant because the Vocational Expert ("VE") testified that limitations to working with supervisors who are non-confrontational and offer constructive criticism "can't [be] guarantee[d] . . . because [there are] different supervisors. Some have skills. Some don't." (Tr. 59.) At the same time, as Plaintiff points out, the basic, mental demands of competitive, unskilled work include the ability to respond appropriately to supervision, coworkers, and usual

8

work situations on a sustained basis.  (Doc. 17 at 7 (citing SSR 85-15).) Responding appropriately to others includes the ability to: (1) accept instructions and respond appropriately to criticism from supervisors; and (2) get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes.  POMS DI 25020.010.  "A substantial loss of ability to meet any of the[] basic work-related activities would severely limit the potential occupational base," which, "in turn would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base."  SSR 85-15.  Based on the foregoing, this case will be reversed and remanded with instructions to the ALJ to reconsider the opinions of Dr. Harris and Dr. Bruno, explain what weight they are being accorded, and the reasons therefor.  If the ALJ rejects any portion of these opinions, she must explain her reasons for doing so.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ to: (a) reconsider the opinions of Dr. Harris and Dr. Bruno, explain what weight they are being accorded, and the reasons therefor; (b) reconsider the RFC assessment, if necessary; and (c) conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on November 18, 2020.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record